## INDUSTRIAL COMMISSION v KUKES

Ohio Appeals, 6th Dist, Erie Co

Decided June 10, 1935

J. W. Bricker, Attorney General, Columbus, H. W. Mitchell, St. Clairsville, A. F. Weichel, Sandusky, and Dan Symons, Elyria, for plaintiff in error.

Carpenter & Freeman, Norwalk, for defendant in error.

### OPINION

By OVERMYER, J.

By this proceeding the Industrial Commission seeks to reverse a judgment entered in the Common Pleas Court for the defendant in error, Teofil Kukes, on an appeal to that court from the proceedings of the Industrial Commission in rejecting a claim for compensation under the Workmen's Compensation Law.

The grounds of error urged are that the judgment is not supported by the evidence, in that the evidence does not show that the employer had three or more workmen employed regularly in the same business; that the claimed injury was not accidental in its origin and cause and that there was no causal connection between the claimed injury and the physical condition complained of by the plaintiff.

Sec 1465-61 (2), GC, provides:

"Every person in the service of any person, firm or private corporation, including any public service corporation, employing three or more workmen or operatives regularly in the same business, in or about the same establishment under any contract of hire, express or implied, oral or written, including aliens and minors, but not including any person whose employment is but casual and not in the usual course of trade, business, profession or occupation of his employer."

This section of the statute has been construed in State ex Bettman, Atty. Gen. v Christen, 128 Oh St, 56, 190 NE, 233, where paragraph 3 of the syllabus reads as follows:

"In order that a person's employment shall be deemed to be in the usual course of the trade, business, profession or occupation of the employer, it must be employment for work of the kind required in the business of the employer and it must be in conformity to the established scheme or system of the business. Such scheme or system comprehends the nature of the enterprise, its organization, its personnel requirements and its methods of operation. The time for which such employment has continued is not controlling."

We have examined the evidence in the light of the above interpretation and find that the employer of Kukes was amenable to the Workmen's Compensation Law, having at all times from the time Kukes began working in June to the time of the alleged injury on September 11th three or more persons regularly employed "for work of the kind required in the business of the employer in conformity to the established scheme or system of the business." Because of the seasonable character of the work of orcharding, the number of employees varied from three to eighteen.

Claimant Kukes, aged about 60 years, was employed by Emma Olds, the owner of a large apple orchard in Erie County, in the summer and fall of 1931, as a general employee in and about the orchard, cutting grass between trees, thinning apples on the trees, making props to support heavily loaded branches, and, in the fall, picking apples. On September 11, 1931, while engaged in picking apples with four other employees, he started to climb a nineteen-foot ladder into an apple tree, when, he says:

"I try to reach one apple on the side and my foot slipped off the step—it was the third step from the top I was on—slipped off and I try to grab the branch, didn't have no time because the wood don't hold and I got to go down. I fell on my back."

The fellow employees, who were standing near the foot of the ladder, corroborate Kukes as to his falling off the ladder, the only difference being that they say he fell from the third or fourth rung from the bottom instead of from the third or fourth from the top. This is not important. The fact that he fell from the ladder is important, for that is an "accident" in the course of his employment. The only question remaining, therefore, is whether any physical injuries resulted from the fall, which proximately caused any of the disabilities of which he complains in his petition, and whether any of such disabilities continued for more than one week.

The evidence is undisputed that claimant rolled on the ground after landing on his back, giving forth exclamations of pain; that one of the other men got him some water; that shortly thereafter he was taken home in a car by his son; that he went to bed, and remained in bed for several weeks; that he then got about on crutches for a time, and then with a cane, and that Dr. Cranston was called on September 17th and found the patient in bed, with a complaint of pain when he moved. There were bruises over the lower back, and contusions, and the physician that day strapped or taped him, "the full length, and then criss-cross, the shape of an X"; that four or five days later the patient again was strapped, and has since remained under the care of the physician with complaints of pains in the back, and, later, of abdominal and leg pains. He made calls at the doctor's office after the first month, and Dr. Cranston testified that on December 28, 1931, Kukes complained of a "ball" in his right groin that was painful, and the physician then found a definite hernia on the right side. Kukes testified he first felt this "ball" or "lump" when he first got out of bed, and that "it show something on me in the right side about as big as my thumb." On the advice of the physician he bought a truss after December 28, 1931, and wore it. He also developed bladder trouble, which the physician testified, could have been a coincident, but when asked if it would be reasonable to suppose that the fall in question was the cause of it he answered, without objection, "You would

naturally think so following an injury." As to the hernia, the physician said: "I can't say he got it falling out of a tree, I can't say he did or didn't." As to the pain in the back the physician testified: "I would have to say that was produced by the fall. I wouldn't know what else it would be." Dr. Cranston further testified, without objection, as follows:

"Q. I say assuming there had been no injury, I mean no violence of any kind, no violent injury of any kind or no violent work of any kind in between the fall and the objective appearance of the hernia, would you believe the reasonable conclusion to be that the fall produced the hernia? A. Yes, if we would be assured there was no violence in between.

"Q. Now, Doctor, would you say, assuming that a man suffered a fall of that kind, a man of his age, and thereafter he was in bed for a period of two or three weeks during which time he complained of his back and side, and then later on in the course of your examination these various things appeared, wouldn't the reasonable conclusion be from those facts that the fall was what produced these injuries and the complaints he made concerning them? A. The most of them, yes. Of course his headache, part of that headache would be there, I am telling you direct, in any patient with a blood pressure of 188. The fall might have made it worse. There are very peculiar things happen to a person in a fall, an injury, that we don't understand. Dr. Crile is our authority for that and he is pretty good. It will bring down a diabetes that has never been present before, such things as that. So you see what we get into when we try to testify about such things."

Dr. Arndt, a witness for the commission, Mrs. Olds' family physician, testified that he visited claimant in company with Dr. Cranston at claimant's home on September 22, 1931, five days after Dr. Cranston's first visit, and that on that date he found "tenderness and some muscular tension" in the lumbar region of the back, but found no discoloration. Dr. Arndt did not say that the tenderness and muscular tension came from the fall, nor would he say it did not.

There was evidence of physical injury resulting from the fall off the ladder and therefore we find there was an issue of fact presented by the evidence which required submission to the jury, and we further find that the verdict in claimant's favor is not manifestly contrary to the weight of the evidence, and, since it is not the function of the court to determine the extent of the disability or amount of compensation, the judgment of the lower court will be affirmed.

Judgment affirmed.

LLOYD and CARPENTER, JJ, concur.